# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF TEXAS
# DALLAS DIVISION

| | | |
|---|---|---|
| JORGE CALDERON–CANAS, | ) | |
|     Movant, | ) | No. 3:16-CV-1764-M-BH |
| vs. | ) | No. 3:13-CR-466-M (5) |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
|     Respondent. | ) | |

## MEMORANDUM OPINION AND ORDER

Based on the relevant findings and applicable law, the *Motion Under 28 U.S.C. § 2255, to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody*, received on June 23, 2016 (doc. 2), as amended (doc. 8), is **DENIED** with prejudice.

## I. BACKGROUND

Jorge Calderon-Canas (Movant) challenges his federal conviction and sentence in Cause No. 3:13-CR-466-M. The respondent is the United States of America (Government).

On March 26, 2014, Movant was charged by superseding indictment with conspiracy to distribute a schedule II controlled substance in violation of 21 U.S.C. § 846 (count one), and illegal reentry after removal in violation of 8 U.S.C. § 1326(a), (b)(2) (count two). (*See* doc. 105.)[1] He pled guilty to count one on June 10, 2014. (*See* doc. 176.) The United States Probation Office (USPO) filed a Presentence Report (PSR) on September 12, 2014, applying the 2013 United States Sentencing Guidelines Manual (USSG). (*See* doc. 260-1 at 9, ¶ 32). The USPO filed an addendum on March 13, 2015, that applied the 2014 USSG. (*See* doc. 316 at 2.) Because Movant had two prior Texas felony convictions for possession with intent to deliver a controlled substance that were considered to be controlled substance offenses, it found him to be a career offender with a criminal

---

[1] Unless otherwise indicated, all document numbers refer to the docket number assigned in the underlying criminal action, 3:13-CR-466-M.

history category of six under USSG § 4B1.1(b).  (*See* doc. 260-1 at 10, ¶ 39, at 11, ¶¶ 44-45, at 12, ¶ 50.)  But for this finding, he would have had a criminal history category of four.  (*See* doc. 260-1 at 12, ¶ 50.)  With an offense level of 29, the resulting guideline range was 151-188 months of imprisonment.  (*See* doc. 316-1 at 2.)  On May 14, 2015, Movant was sentenced to 156 months' imprisonment.  (*See* doc. 335 at 2.)  His appeal was dismissed because it did not present any non-frivolous issue. (*See* doc. 369.)

Movant contends that his trial counsel was ineffective for failing to object to the career offender enhancement under the sentencing guidelines.  (*See* No. 3:16-CV-1764-M, doc. 8 at 5.)[2]

## II.  SCOPE OF RELIEF AVAILABLE UNDER § 2255

"Relief under 28 U.S.C. § 2255 is reserved for transgressions of constitutional rights and for a narrow range of injuries that could not have been raised on direct appeal and would, if condoned, result in a complete miscarriage of justice."  *United States v. Gaudet*, 81 F.3d 585, 589 (5th Cir. 1996) (citations and internal quotation marks omitted).  It is well-established that "a collateral challenge may not do service for an appeal."  *United States v. Shaid*, 937 F.2d 228, 231 (5th Cir. 1991) (*en banc*) (quoting *United States v. Frady*, 456 U.S. 152, 165 (1982)).

A failure to raise a claim on direct appeal may procedurally bar an individual from raising the claim on collateral review.  *United States v. Willis*, 273 F.3d 592, 595 (5th Cir. 2001). Defendants may only collaterally attack their convictions on grounds of error omitted from their direct appeals upon showing "cause" for the omission and "actual prejudice" resulting from the error. *Shaid*, 937 F.2d at 232.  However, "there is no procedural default for failure to raise an ineffective-

---

[2] Movant filed a habeas petition under 28 U.S.C. § 2241 in No. 3:16-CV-3506-M that challenged his sentence, and it was construed as another § 2255 motion and consolidated with this case.  (*See* 3:16-CV-1764-M, doc. 5.)

2

assistance claim on direct appeal" because "requiring a criminal defendant to bring [such] claims on direct appeal does not promote the[] objectives" of the procedural default doctrine, "to conserve judicial resources and to respect the law's important interest in the finality of judgments." *Massaro v. United States*, 538 U.S. 500, 503-04 (2003). The Government may also waive the procedural bar defense. *Willis*, 273 F.3d at 597.

### III. INEFFECTIVE ASSISTANCE OF COUNSEL

The Sixth Amendment to the United States Constitution provides in relevant part that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defense." U.S. Const. art. VI. It guarantees a criminal defendant the effective assistance of counsel, at trial and on appeal. *Strickland v. Washington*, 466 U.S. 668 (1984); *Evitts v. Lucey*, 469 U.S. 387, 396 (1985). To successfully state a claim of ineffective assistance of counsel, the prisoner must demonstrate that counsel's performance was deficient and that the deficient performance prejudiced his or her defense. *Id.* at 687. A failure to establish either prong of the *Strickland* test requires a finding that counsel's performance was constitutionally effective. *Id*. at 696. The Court may address the prongs in any order. *Smith v. Robbins*, 528 U.S. 259, 286 n.14 (2000).

In determining whether counsel's performance is deficient, courts "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable assistance." *Strickland*, 466 U.S. at 689. "The reasonableness of counsel's actions may be determined or substantially influenced by the defendant's own statements or actions." *Id.* at 691. To establish prejudice, a petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*. at 694; *Williams v. Taylor*, 529

U.S. 362, 393 n.17 (2000) (inquiry focuses on whether counsel's deficient performance rendered the result of the trial unreliable or the proceeding fundamentally unfair). Reviewing courts must consider the totality of the evidence before the finder of fact in assessing whether the result would likely have been different absent counsel's alleged errors. *Strickland*, 466 U.S. at 695-96.

To show prejudice in the sentencing context, a petitioner must demonstrate that the alleged deficiency of counsel created a reasonable probability that his or her sentence would have been less harsh. *See Glover v. United States*, 531 U.S. 198, 200 (2001) (holding "that if an increased prison term did flow from an error [of counsel] the petitioner has established *Strickland* prejudice"). One cannot satisfy the second prong of *Strickland* with mere speculation and conjecture. *Bradford v. Whitley*, 953 F.2d 1008, 1012 (5th Cir. 1992). Conclusory allegations are insufficient to obtain relief under § 2255. *United States v. Woods*, 870 F.2d 285, 288 n.3 (5th Cir. 1989); *see also Miller v. Johnson*, 200 F.3d 274, 282 (5th Cir. 2000) (holding that "conclusory allegations of ineffective assistance of counsel do not raise a constitutional issue in a federal habeas proceeding").

### A. **Analytical Framework**

Movant contends that counsel failed to argue that the career offender enhancement could not apply to him because the two Texas offenses of which he was convicted fall outside the definition of "controlled substance offense." (3:16-CV-1764-M, doc. 8. at 6.)

The appropriate approach to be used by courts in determining whether a prior conviction qualifies as one for a controlled substance offense as defined in the career offender sentencing guideline, § 4B1.1(b),[3] depends on whether the statute setting out the offense is divisible or

---

[3] Under USSG § 4B1.1(b), a defendant is a career offender if he has at least two prior felony convictions of either a crime of violence or a controlled substance offense. A "controlled substance offense" is the possession of a controlled substance with intent to manufacture, import, export, distribute, or dispense. USSG § 4B1.2(b). A career offender automatically has a criminal history category of six. USSG § 4B1.1(b).

indivisible. *See United States v. Hinkle*, 832 F.3d 569, 574 (5th Cir. 2016) (citing *United States v. Najera-Mendoza*, 683 F.3d 627, 629 (5th Cir. 2012)). If the statute sets out "a single set of elements [defining]," or "various means of committing," a single crime or offense, it is indivisible. *United States v. Lerma*, 877 F.3d 628, 631 (5th Cir. 2017); *United States v. Howell*, 838 F.3d 489, 497 (5th Cir. 2016). If the statute "lists multiple, alternative elements, and so effectively creates 'several different ... crimes,'" it is divisible. *Descamps v. United States*, 570 U.S. 254, 263-64 (2013) (quoting *Nijhawan v. Holder,* 557 U.S. 29, 41 (2009)). "An element of a crime must be distinguished from the means of satisfying a single element." *Lerma*, 877 F.3d at 631. The test for determining whether a statute alternatively sets out elements or alternative means of satisfying an element is whether a jury must agree on one of the statutory alternatives in reaching a verdict. *Howell*, 838 F.3d at 497.

> Elements must be agreed upon by a jury. When a jury is not required to agree on the way that a particular requirement of an offense is met, the way of satisfying that requirement is a means of committing an offense not an element of the offense.

*Id.* at 498 (quoting *Hinkle*, 832 F.3d at 574-75).

If a statute is indivisible because it sets out a single set of elements, the sentencing court must apply the "categorical approach." *Mathis v. United States*, 136 S.Ct. 2243, 2248 (2016). This approach requires the court to compare the elements of the statutory offense of which the defendant was convicted to the elements of the guideline offense. *Howell*, 838 F.3d at 494. The court "do[es] not consider the actual conduct of the defendant in committing the offense." *Id.; see also Lerma*, 877 F.3d at 631 ("The sentencing court is not permitted to review the particular facts of the case."). If the statute "criminalizes a greater swath of conduct than the elements of the relevant [Guidelines] offense," then a conviction under that statute cannot be used as a basis for enhancement under §

5

4B1.1(b). *See United States v. Tanksley*, 848 F.3d 347, 352 (5th Cir. 2017), *supplemented by* 854 F.3d 284 (5th Cir. 2017).

If a statute is divisible because it lists alternative elements, the sentencing court must use the "modified categorical approach" to determine the elements under which the defendant was convicted. *Mathis*, 136 S.Ct. at 2253. Under this approach, the court looks "to a limited class of documents (for example, the indictment, jury instructions, or plea agreement and colloquy) to determine what crime, with what elements, a defendant was convicted of [committing]." *Id*. at 2249 (citations omitted). If the elements of the prior offense include conduct that is not included in the guideline offense, the prior offense is broader than the guideline offense, and the prior conviction cannot be used for enhancement under the guideline. *Tanksley*, 848 F.3d at 352.

**B.** **Applicable Law at Sentencing**

In *United States v. Ford*, 509 F.3d 714 (5th Cir. 2007), the Fifth Circuit determined that the Texas statute setting out the offense of possession with intent to deliver a controlled substance[4] was divisible, so a review of the state court documents was appropriate under the modified categorical approach to determine which of the alternative elements of the offense were committed by a defendant. *See Tanksley*, 848 F.3d at 351 (discussing *Ford*). It held that the Texas crime of possession with intent to deliver a controlled substance was a controlled substance offense within the meaning of § 4B1.1. *Ford,* 509 F.3d at 717. Accordingly, at the time Movant was sentenced in 2015, his two prior Texas felony convictions for possession with intent to deliver a controlled

---

[4] A person commits an offense under Texas law "if the person knowingly manufactures, delivers, or possesses with intent to deliver a controlled substance." Tex. Health & Safety Code § 481.112(a). "Deliver" means to "transfer, actually or constructively, to another a controlled substance .... The term includes offering to sell a controlled substance." Tex. Health & Safety Code § 481.002(8).

6

substance qualified as controlled substance offenses for purposes of § 4B1.1 under *Ford*.

**C.**     ***Descamps/Mathis***

Movant contends that counsel was ineffective for failing to argue that *Ford* had been overruled by the Supreme Court's decision in *Descamps*, which was issued in 2013, before he was sentenced. He argues *Descamps* made clear that when analyzing a state statute, the focus should be on the elements, and not the means by which a person can commit the elements of the statute.

In *Descamps,* the petitioner was convicted of being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g). *See id.* at 258. The Government sought to enhance his sentence under the Armed Career Criminal Act (ACCA)[5] based on his prior state convictions for burglary, robbery, and felony harassment. *Id.*[6] The petitioner argued that his burglary conviction could not be an ACCA predicate offense under the categorical approach because the conduct captured by the state offense swept more broadly and went beyond the "generic," or normal, definition of burglary, which precluded his conviction from serving as an ACCA predicate offense. *Id.* at 259.

The issue before the Supreme Court was whether the modified categorical approach applies to statutes that contain a single, "indivisible" set of elements that sweep more broadly than the relevant generic offense. *Id.* at 260. The Court began by noting that its case law on the categorical approach and the "modified" categorical approach almost resolved the case. *Id.* It also explained the difference between a divisible statute and an indivisible statute: a divisible statute includes

---

[5] To qualify for sentencing under ACCA, a defendant must be convicted of felon in possession of a firearm in violation of 18 U.S.C. § 922(g) and have "three previous convictions . . . for a violent felony or a serious drug offense." 18 U.S.C. § 924(e)(1). ACCA prescribes a 15-year mandatory minimum sentence. *Id.*

[6] Descamps had pleaded guilty to violating California Penal Code Ann. § 459 (2010), which states that a "person who enters" certain specified locations "with intent to commit grand or petit larceny or any felony is guilty of burglary." 570 U.S. at 258-59. Section 459 does not require that the entry have been unlawful as most burglary laws require. *Id.* at 259.

7

statutory alternatives that are separate and distinct elements, and an indivisible statute involves alternative means of committing a single set of elements. *See id.* at 257-58.[7] The Court ultimately held that a sentencing court could not use the modified categorical approach, which allows for the review of documents such as the indictment, jury instructions, or the plea agreement to determine the specific conduct of a defendant, when the statute he was convicted of violating has a single, indivisible set of elements. *See id.* at 278. The rationale for the Court's holding was that the modified categorical approach is only appropriate to determine which alternative element of a divisible statute forms the basis of a defendant's prior conviction. *See id*. at 277-78.

Approximately three years after *Descamps*, the Supreme Court issued its decision in *Mathis*. 136 S.Ct. 2243. In *Mathis*, the petitioner pled guilty to being a felon in possession of a firearm. *See id.* at 2250. At his sentencing, the Government moved to enhance his sentence under ACCA, based upon his five prior state convictions for burglary in Iowa. *See id.* Iowa's burglary statute covers more conduct than generic burglary. *See id.*[8] The sentencing court imposed an ACCA-enhanced sentence on the petitioner. *See id.*

The issue before the Supreme Court was whether ACCA makes an exception to the rule that when a defendant is convicted under a statute that includes multiple, alternative means of satisfying an element. *See id.* at 2247-48. It noted that for at least 25 years, its decisions had held that a prior

---

[7] Although *Descamps* addressed the categorical and modified categorical approaches in the context of predicate offenses under ACCA, cases regarding those approaches are also applicable to offenses defined in the enhancement provisions of the sentencing guidelines. *See, e.g., Hinkle*, 832 F.3d at 574.

[8] Specifically, the generic burglary offense includes unlawful entry into a "building or other structure," and Iowa's burglary statute includes a greater range of places: "any building, structure, <u>land, water, or air vehicle</u>." *See* 136 S. Ct. at 2250 (quoting Iowa Code § 702.12 (2013) (emphasis added)). The Iowa Supreme Court held that each of the listed locations serve as an "alternative method of committing [the] single crime," and a jury is not required to agree on which specific location was actually involved. *See id.* (quoting *State v. Duncan*, 312 N.W.2d 519, 523 (Iowa 1981)).

8

crime qualifies as an ACCA predicate only if the elements are the same or more narrow than those of the generic offense. *See id.* at 2247. It discussed how to determine whether statutory alternatives are actual elements (and must be charged) or are merely means of committing a single element (and need not be charged). *See id*. at 2256. A sentencing court may determine whether statutory alternatives are elements or means by looking to state law. *See id.* For example, the sentencing court can examine state court decisions on whether a jury must be unanimous about such alternatives. *See id.* If jury unanimity is required, a statute is divisible. *See id.* at 2248. If jury unanimity is not required, a statute is indivisible. *See id*.

After *Descamps* and *Mathis*, the Fifth Circuit addressed whether a Texas delivery of a controlled substance offense was a controlled substance offense under the guidelines in *Hinkle*. 832 F.3d at 571-74. The defendant argued that under *Descamps,* the statutory alternatives of delivery were means and not elements, so the sentencing court should not have reviewed the underlying documents in the state criminal case to determine whether his offense was a delivery by an offer to sell that was not a controlled substance offense under the guideline, or a form of delivery that was a controlled substance offense under the guideline. *See id.* In accordance with *Mathis*, which had been decided while *Hinkle* was pending, the Fifth Circuit examined state court decisions on jury unanimity regarding the Texas statute and determined that the statute set out alternative means within a single element, so it was indivisible. *See id*. at 575-76. Because one of the statutory means of accomplishing a delivery of a controlled substance was by an offer to sell, the Texas offense did not match the guideline's definition of a controlled substance offense, and the prior offense of delivery of a controlled substance did not subject the defendant to the guideline enhancement. *See id*.; *United States v. Lee*, 419 F. App'x 480, 481 (5th Cir. 2011) (offer to sell drugs under Texas statute is not

a controlled substance offense under the career offender guideline). *Hinkle* did not mention *Ford*.

Shortly after *Hinkle*, the Fifth Circuit observed in *Howell* that "the issue that has divided courts, and with great respect to the Supreme Court, confused courts attempting to apply *Descamps* and the decisions preceding it, is how to determine if a statute is 'divisible.'" 838 F.3d at 497 (footnote omitted). It noted that *Mathis* "provided needed guidance on when a statute of conviction is divisible" and how to "distinguish means from elements" by reviewing state court decisions to determine if a jury must agree on the statutory alternatives. *See id*.

Subsequently, in a case which involved possession with intent to deliver, the Fifth Circuit again reviewed a state court decision on jury unanimity as directed by *Mathis,* and it held that the Texas statute criminalizing possession with intent to deliver was indivisible and not a controlled substance offense under the guideline for the same reasons as in *Hinkle*. *See Tanksley*, 848 F.3d at 352. It acknowledged that "prior to *Mathis*, Section 481.112(a)'s status as a divisible statute subject to a modified categorical approach was firmly established." *See id*. at 351. It found that "*Mathis* is 'more than merely illuminating with respect to the case before us;' it unequivocally resolves the question in favor of Tanksley," however. *Id.* at 352. Finding that it "cannot stand" in light of *Mathis,* the Fifth Circuit expressly abrogated *Ford*. *Id.*;

These Fifth Circuit cases make clear that it was *Mathis*, rather than *Descamps*, that instructed the lower courts on how to determine whether statutory alternatives are elements or means, and that led to the abrogation of *Ford*. *See United States v. Elizalde-Perez*, 727 F. App'x 806, 809 n.3 (5th Cir. 2018) (finding that *Ford* was abrogated in light of the guidance in *Mathis*); *Villa-Sanchez v. United States*, No. 3:17-CV-3457-D, 2018 WL 2299057, at *1 (N.D. Tex. May 21, 2018) (finding that if not for the instruction in *Mathis* to review state court decisions, *Ford* would have remained

10

the law in this circuit).

Movant argues that the Fifth Circuit applied the elements-focused approach of *Descamps* in *Tanksley* and *Hinkle*. He claims *Descamps* held that the statutory alternatives for committing an offense under the Texas drug delivery statute are alternative means of committing the same offense, not alternative elements of the offense, so the statute is indivisible. As a result, one of the alternative means, delivery by an offer to sell, is not a controlled substance offense under the guideline. He notes that *Mathis* clarified the importance of *Descamps*, applied the Supreme Court's "longtime and exclusive focus on the elements," and did not change the law. (*See* 3:16-CV-1764, doc. 8 at 6-8.) Movant contends that the key point in *Mathis* was that the modified categorical approach could be used when a statute sets out alternative elements, instead of alternative factual means, and the Supreme Court clearly stated in *Descamps* that elements are not factual means. He claims that counsel should have relied on *Descamps* to argue that his prior convictions were not controlled substance offenses under the guideline. He also notes that the defendant in *Hinkle* challenged the holding of *Ford*, argued that the statute was indivisible under *Descamps*, and prevailed on appeal.[9] (*See id.*, doc. 16 at 2-3.)

Courts have rejected similar arguments. For example, in *United States v. Woods*, the Fifth Circuit held that counsel was not ineffective for failing to argue that a Texas controlled substance offense was not a controlled substance offense under the guideline because *Mathis*, *Hinkle*, and *Tanksley* were all decided after he was sentenced. 714 F. App'x 455, 456 (5th Cir. 2018). In *Villa-*

---

[9] Movant also argues that instead of presenting an argument based on *Descamps*, counsel questioned the validity of a prior conviction and unsuccessfully argued that it may be subject to a collateral attack in state court. He argues that counsel's strategy regarding a potential state habeas challenge was unreasonable. The Government responds that counsel was not ineffective for failing to raise the *Descamps* argument because of controlling Fifth Circuit precedent at the time of sentencing.

*Sanchez*, the district court held that counsel was not ineffective for failing to argue that *Descamps* overruled *Ford* because it was actually overruled by *Mathis*, which was decided after the defendant was sentenced. 2018 WL 2299057, at *1. In *McCowen v. United States*, No. 3:16-CV-1909-B, 2018 WL 1135627, at *2 (N.D. Tex. Jan. 18, 2018), *rec. adopted*, 2018 WL 1083820 (N.D. Tex. Feb. 27, 2018), the district court held that counsel was not ineffective for failing to argue that Texas convictions for possession with intent to deliver a controlled substance did not qualify for enhancement under the guideline because *Ford* was the controlling authority when the movant was sentenced and was not abrogated until *Tanksley*. Although the attorney in *Hinkle* argued that an offense under the Texas statute was not a controlled substance offense under the guideline based on *Descamps*, he prevailed because *Mathis* was fortuitously decided while the case was on appeal, not because of counsel's argument under *Descamps*.

**D.    Duty to Anticipate**

*Ford* was the controlling precedent in the Fifth Circuit at the time of Movant's sentencing in 2015, and it continued to be the law of the circuit until it was subsequently abrogated in *Tanksley* based on the Supreme Court's 2016 decision in *Mathis*. "Although a failure of counsel to be aware of prior controlling precedent in even a single prejudicial instance might render counsel's assistance ineffective under the Sixth Amendment," it is well-established "that there is no general duty on the part of defense counsel to anticipate changes in the law." *United States v. Fields*, 565 F.3d 290, 295 (5th Cir. 2009) (citations and internal quotation marks omitted). In the specific context of counsel's performance at sentencing, the Fifth Circuit has "explained that, of course, counsel's inability to foresee future pronouncements which will dispossess the Court of power to impose a particular sentence which is presently thought viable does not render counsel's representation ineffective." *Id.*

12

(internal quotation marks omitted).

Because counsel was under no duty to anticipate the use of state court decisions under *Mathis* to determine whether a statute is divisible, as well as the Fifth Circuit's subsequent abrogation of *Ford* based on that case, Movant has not shown that counsel was ineffective for failing to argue that his prior convictions did not qualify under the guideline in light of *Descamps*.

## IV. CONCLUSION

The motion to vacate, set aside, or correct sentence under 28 U.S.C. § 2255 is **DENIED** with prejudice.

After considering the record in this case, and in accordance with Federal Rule of Appellate Procedure 22(b), Rule 11(a) of the Rules Governing §§ 2254 and 2255 proceedings, and 28 U.S.C. § 2253(c), Movant is **DENIED** a Certificate of Appealability. He has failed to show (1) that reasonable jurists would find this Court's "assessment of the constitutional claims debatable or wrong," or (2) that reasonable jurists would find "it debatable whether the petition states a valid claim of the denial of a constitutional right" and "debatable whether [this Court] was correct in its procedural ruling." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).[10]

If Movant files a notice of appeal, he must pay the $505.00 filing fee or file a motion for

---

[10] Rule 11 of the Rules Governing §§ 2254 and 2255 Cases, as amended effective on December 1, 2009, reads as follows:

(a) Certificate of Appealability. The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant. Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue. If the court issues a certificate, the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2). If the court denies a certificate, the parties may not appeal the denial but may seek a certificate from the court of appeals under Federal Rule of Appellate Procedure 22. A motion to reconsider a denial does not extend the time to appeal.

(b) Time to Appeal. Federal Rule of Appellate Procedure 4(a) governs the time to appeal an order entered under these rules. A timely notice of appeal must be filed even if the district court issues a certificate of appealability.

leave proceed *in forma pauperis* on appeal with a properly signed certificate of inmate trust account.

**SIGNED on this 24th day of September, 2019.**

_____
BARBARA M. G. LYNN
CHIEF JUDGE